Kenneth K. Kepler v. Commissioner. Florence Kepler v. Commissioner.
Kenneth K. Kepler v. Commissioner
Docket Nos. 12225 and 12226.
United States Tax Court
1948 Tax Ct. Memo LEXIS 183; 7 T.C.M. (CCH) 304; T.C.M. (RIA) 48087; May 24, 1948
*183 George H. van de Steeg, Esq., Nampa, Idaho, for the petitioners. Robert G. Harless, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: The consolidated proceedings involve income and victory tax deficiencies for the calendar year 1943, in the amounts of $298.09 against Kenneth K. Kepler and $609.63 against his wife, Florence Kepler. The year 1942 is involved in both proceedings because of the forgiveness features of section 6, Current Tax Payment Act of 1943. The sole issue is whether, in determining the petitioner's community income, the respondent erred in disallowing a claimed bad debt deduction of $3,300 for year 1942. Certain other adjustments made by respondent are not controverted. Findings of Fact The petitioners now are, and during the taxable years were, husband and wife. At the present time they reside in Evanston, Illinois, but during 1937 to 1943, inclusive, their legal residence was Nampa, Idaho, and for each of those years they filed timely separate income tax returns on the community property basis with the collector for the district of Idaho. For the years 1942 and 1943 each petitioner reported for tax purposes *184 one-half of the net income shown on Kenneth Kepler's returns. During 1942 and prior thereto Kenneth Kepler was a district manager for Sears Roebuck and Company, and from February 1943 until June 1945 he was on active duty in the United States Navy. At the times material here Mrs. Kepler was not employed and she received no income from any independent source. Upon the death of her father in 1929, Mrs. Kepler, then Florence Moran Davis, and her brother, Haven S. Davis, each inherited an undivided one-half interest in fee simple in an improved 340-acre farm located in Tippecanoe County, Indiana, subject to two mortgages, totaling the principal sum of $7,000. Haven S. Davis with his wife, Martha Y. Davis, and their six children lived on the farm and operated it. In 1930 Mrs. Kepler deeded her undivided one-half interest in the farm to her brother for purposes of record title so that he could more readily manage and operate the farm in his name, increase the mortgage indebtedness thereon if and when necessary, and pay off such indebtedness when he was able to do so. At the same time Haven S. and Martha Y. Davis executed a warranty deed to Florence M. Davis, now Mrs. Kepler, for an undivided *185 one-half interest in the farm subject to mortgages and liens for taxes thereon. The latterdeed was deposited in escrow with Mrs. Kepler's lawyer, Clyde Jones, to be recorded in the event of the death of Haven S. Davis. Mrs. Kepler continued to own an undivided one-half interest in the farm until following her brother's death, in 1944, the farm was partitioned in 1947 between the brother's widow and Mrs. Kepler. Over a period of years Kenneth Kepler advanced sums of money to Haven S. Davis on the dates and in the amounts as follows: September 15, 1932
$ 100
November 10, 1935
200
March 15, 1936
200
November 1, 1939
650
April 5, 1940
650
October 16, 1941
1,500
Total
$3,300 On the occasion of the first three or four advances the amounts thereof were not evidenced by notes, but subsequently Davis executed for each advance a note antedated to the date each advance was made. Each of the later advances was evidenced by Davis' note given at the time the advance was made. Each of the six notes signed by Haven S. Davis promised to pay to the order of K. K. Kepler the face amount thereof one year after date, with five per cent interest per annum from the date thereof *186 to maturity and eight per cent interest per annum after maturity until paid. The funds so advanced by Kepler to Davis were used by the latter for various purposes including the upkeep and operation of the farm, the payment of taxes, and the support of his family. During the years from 1931 to 1942, inclusive, Davis' farming operations were unsuccessful, year after year his income was less than his expenses, he was insolvent much of the time, and he was financially unable to repay Kepler's advances, but on several occasions when request for payment was made he said he would repay the advances when he was able to do so. During those years the mortgage loan on the farm was never curtailed, but was increased from time to time from the $7,000 mortgage in 1929 to over $18,000 by 1942 and remained at that amount until the time of Davis' death in 1944. Davis never repaid Kepler any portion of the principal amount of the latter's advances nor any interest thereon, and Kepler still held the above-mentioned notes at the time of Davis' death in 1944. In 1942 Kepler considered bringing suit against Davis for collection of the notes but decided that would be useless, and in that year and for *187 the purpose of claiming a bad debt deduction, he determined that the notes were uncollectible and had become worthless. Davis was burned to death in 1944 in a fire which destroyed the dwelling on the farm. His family was left destitute and Mrs. Kepler spent some $5,000 for payment of various bills, for clothing for the widow and children, and for remodeling a tenant house on the farm for the latter to live in. Davis' personal estate was probated, but Kepler filed no claim on account of the above-mentioned notes because there was no possibility of collection. In January 1947 the petitioners jointly brought suit against Martha Y. Davis and other parties for partition of the farm, in accounting, and to quiet title. In April 1947 Mrs. Kepler and Mrs. Martha Y. Davis entered into a contract, joined in by Kenneth K. Kepler, whereby in settlement of the suit Mrs. Kepler received 180 unimproved acres of the farm and $3,000 cash "in full payment, satisfaction and compromise of any and all claims and demands of the said Florence Davis Kepler and Kenneth K. Kepler, including any and all notes and demands, of them, or either of them, against Martha Yount Davis or the Estate of Haven S. Davis, *188 deceased." The $3,000 cash payment was in settlement of Mrs. Kepler's claim for her share of the rents and profits of the farm from 1944 to 1947 and did not apply to Haven S. Davis' notes. Reference to the notes was put in the contract merely because of Mrs. Davis' insistence. The notes evidencing Kenneth Kepler's advances to Haven Davis in the total principal amount of $3,300 became worthless prior to 1942. Opinion The issue herein presents a purely fact question of whether the notes for $3,300 constituted debts which had "become worthless within the taxable year" 1942 so as to constitute a deduction under section 23 (k) of the Internal Revenue Code, as amended by section 124 (a) of the Revenue Act of 1942. In our opinion the facts herein show conclusively that the advances or loans, if not actually worthless at the times they were made, certainly became worthless prior to the year 1942 for the testimony of petitioners clearly shows that prior to that year the notes were wholly uncollectible because over the period from 1931 to 1942 Davis' farming operations were unsuccessful, his income was less than his expenses, and he was insolvent much of the time. *189 During those years Davis from time to time had greatly increased the mortgage loan on the farm in which he owned an undivided one-half interest and there is no evidence of the value of the farm at the times material here or that Davis ever owned any other property. Since the debt did not "become worthless" in the tax year 1942, it may not be deducted in that year, Meltzer et ux. v. Commissioner, 154 Fed. (2d) 776, certiorari denied, 329 U.S. 723. The respondent did not err in his determination. Decision will be entered for the respondent in each proceeding.